**Clayton CASE**

v.

**ST. PAUL FIRE AND MARINE IN-
SURANCE COMPANY.**

Civ. A. No. 69–62.

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

March 29, 1971.

R. C. Edwins, Donald G. Cave, Edwins, Cave & McKay, Baton Rouge, La., for plaintiff.

Frank J. Polozola, Seale, Smith, Baine & Phelps, Baton Rouge, La., for defendant.

WEST, Chief Judge:

Plaintiff brings this action against St. Paul Fire and Marine Insurance Company as the errors and omissions insurer of plaintiff's erstwhile attorney, Joseph J. Laura, Jr., Esq. The pertinent facts have been agreed to by counsel and a joint stipulation attesting thereto has been filed in the record. The matter is presently before the Court for a determination of the contested legal issues as set forth in the recorded stipulation.

■ Briefly the facts are that plaintiff, Clayton Case, was injured on April 30, 1965, while in the employ of Noble Drilling Corporation. At the time of the injury he was working as a roughneck aboard a movable drilling barge located at the time in the Gulf of Mexico, and owned, operated and completely controlled by Chevron Oil Company. Noble Drilling Corporation had no control over the operation of the drilling barge. Following his injury, plaintiff retained the services of Joseph J. Laura, Jr., Esq., to represent him and to protect his interest in all legal matters growing out of the accident causing his injury. Mr. Laura thereafter filed a claim on behalf of the plaintiff with the Deputy Commissioner of United States Department of Labor, Bureau of Employees Compensation, for benefits under the Longshoremen and Harbor Workers Act, and as a result thereof, plaintiff has received something in excess of $5,000, and is probably still receiving benefits from that source. No other claim or suit was filed by Mr. Laura on behalf of plaintiff. More than three years after the accident, plaintiff contacted his present attorney who advised him that any Jones Act suit which he might have had was now prescribed, and that also there was a good possibility that any suit under the General Maritime Law might well be barred by laches. His attorney proceeded to file a suit against Mr. Laura's professional liability insurer, St. Paul Fire and Marine Insurance Company. A motion was filed by St. Paul to dismiss on the grounds of prematurity, which motion was granted. Plaintiff's attorney then filed a suit against Noble Drilling Company under both the Jones Act and under General Maritime Law. After hearing motions filed by the defendant in that suit, the Jones Act claim was dismissed by the Court on the ground that it had prescribed by the passage of more than three years, and the claim under General Maritime Law was dismissed on the ground that the defendant in that suit, Noble Drilling Corporation, did not own, manage, charter, or control the vessel involved, and hence no maritime claim for unseaworthiness or negligence could exist. Actually, the Jones Act claim could and should have been dismissed also on the ground that since Noble did not own or operate the vessel in question, there was no employee-employer shipowner or operator relationship required by the Jones Act. Hence, it has been judicially decreed that plaintiff had no valid claim under the Jones Act or under general maritime law against his employer, Noble Drilling Corporation, and thus, insofar as that aspect of plaintiff's possible recourse is concerned, his prior attorney, Mr. Laura, did all that he could do when he filed a claim for the plaintiff under the Longshoremen and Harbor Workers Act. But he failed to pursue the other avenue open to him, i. e., a claim under general maritime law against Chevron Oil Company, the owner and operator of the vessel upon which plaintiff was working at the time of his injury. If plaintiff could prove either unseaworthiness of the vessel, or negligence in its operation, for which Chevron was legally liable, he had a possibility of recovering for his injuries from Chevron. Mr. Laura had more than ample time before that claim could have been barred by laches to have ascertained the

identity of the owner of the vessel if he did not already know it, and to have exerted a claim in that direction for plaintiff's injuries. This he failed to do. Whether or not laches has now, in fact, barred such a claim is immaterial. The accident happened six years ago. Suit should have been filed at least three years ago, and failure to have filed it is at least prima facie evidence of negligence. At the very least, should plaintiff attempt at this late date to recover from Chevron, he would be met with a formidable defense of laches which would not have been available to his adversary had suit been filed before the expiration of three years following the accident. Whether or not in the final analysis plaintiff has been damagd by failure to timely file suit against Chevron can only be determined after a trial involving the question of whether or not it was negligence of Chevron or unseaworthiness of its vessel that caused the plaintiff's injury. If that question is answered affirmatively, then the present defendant, St. Paul, would be liable as Mr. Laura's insurer for those damages. If it is answered in the negative, then St. Paul would, of course, not be liable.

The two legal questions "certified" to the Court by the stipulation filed are:

1. Is it a requirement under the Jones Act that a suit be filed by a seaman-employee against a shipowner-employer?

2. Is the judgment that was rendered in suit No. 68–219 entitled "Clayton Case v. Noble Drilling Company" binding upon the plaintiff in this suit?

■ In answer to the first question, it is the opinion of this Court that in order for a seaman to recover under the Jones Act, he must sue his employer, who must own, charter, operate, or control the operation of the vessel to which the seaman was more or less permanently attached at the time of his injury. Thomas v. Peterson Marine Service, Inc., 411 F.2d 592 (C.A. 5–1969); Gilmore and Black, The Law of Admiralty, (1957), p. 285; Norris, The Law of Seamen, (1970), § 670, pp. 310–311, § 687, p. 362; Williamson v. Daspit Brothers Marine Divers, Inc., 219 F.Supp. 370, aff'd 5 Cir., 337 F.2d 337 (E.D.La.1964).

■ The judgment rendered in the case referred to in the second question is certainly binding on the plaintiff, Clayton Case, insofar as any recovery against Noble is concerned, and the holding in that case is quite dispositive of the question presented in the present case as to whether or not plaintiff was damaged by the fact that Mr. Laura failed to file suit against Noble. We have already concluded that no damage resulted to the plaintiff from Mr. Laura's failure to sue Noble because plaintiff had no valid claim against Noble to begin with, except a possible claim under the Longshoremen and Harbor Workers Act, which claim was properly pursued by Mr. Laura.

In accordance herewith this case will be set for trial on the merits of plaintiff's claim for damages against the defendant, St. Paul Fire & Marine Insurance Company, as the professional liability insurer of Mr. Laura.