**Donald Steven LeMASTER, Plaintiff,**

v.

**CITY OF WINNEMUCCA, Les Jones, and Alfred Standridge, Defendants.**

**No. CV–R–85–483–ECR.**

United States District Court,
D. Nevada.

Oct. 8, 1986.

Steven LeMaster, Winnemucca, Nev., for plaintiff.

William C. Jeanney, Reno, Nev., for defendants.

ORDER

EDWARD C. REED, Jr., Chief Judge.

The defendants have moved to dismiss this case pursuant to Fed.R.Civ.P. 12 due to plaintiff's failure to comply with Fed.R.Civ.P. 4(j). Rule 4(j) reads:

Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Fed.R.Civ.P. 4(j).

Plaintiff, Donald LeMaster, filed a complaint against the defendants, on August 30, 1985, and an amended complaint on January 10, 1986. The defendants were not served with process until January 15, 1986, 137 days after the original complaint was filed.

Since service was not effected within 120 days, plaintiff must establish "good cause" for the delay. *Coleman v. Greyhound Lines, Inc.,* 100 F.R.D. 476, 478 (N.D.Ill. 1984). Plaintiff's claim of good cause is based on the illness of his attorney, David Dean. On April 15, 1985, Dean learned that he had a form of cancer. Between April 15, 1985, and January 10, 1986, Dean

received extensive chemotherapy and radiation treatments which forced him to spend up to three days a week at Veteran's Hospital. As a result, Dean claims that he was mentally and physically unable to discharge the duties he owed to his numerous clients. By January 10, 1986, however, Dean claims that he was well enough to serve all his clients.*

The defendants have not disputed these facts but they maintain that good cause has not been shown. They claim that since Dean was well enough to file a complaint in this case on August 30, 1985, and since there is no evidence that Dean's condition changed after that date, there is no reason that he could not have served the defendants on time. The defendants find further support for their contention in the fact that Dean filed a motion for continuance in another case pending in federal district court. According to the defendants, these acts show that Dean knew that he needed to protect his clients' procedural rights and that he could have taken steps to do so in this case, including referring the plaintiff to another attorney.

Unfortunately, neither the statute itself nor its legislative history define "good cause." Moreover, the cases that have addressed the issue are more helpful in determining what is not good cause, rather than what is. *Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir.1985) (neither inadvertence of counsel nor plaintiff's desire to amend his complaint before service constitute good cause); *Ruley v. Nelson*, 106 F.R.D. 514, 518 (D.Nev.1985) (counsel's ignorance of Rule 4(j) no excuse and desire to learn more about the case insufficient); *Arroyo v. Wheat*, 102 F.R.D. 516, 518 (D.Nev. 1984) (Rule 4(j) is aimed at inadvertent or heedless nonservice); *Coleman, supra*, at 477–478 (inadvertence of new lawyer in not discovering original lawyer's failure to serve is not good cause).

The only circumstances that clearly constitute good cause are where the putative defendant is "evasive of service," 128 Cong.Rec. H 9849, H 9852 n. 25 (daily ed.

Dec. 15, 1982), and where the plaintiff has made reasonable efforts to effect service. *Arroyo, supra*, at 518. The cases cited above, however, do shed light on the policy behind Rule 4(j). The Ninth Circuit Court of Appeals' reasoning in *Wei* is especially helpful. As the court said, "[t]he rule is intended to force parties and their attorneys to be diligent in prosecuting their causes of action." *Wei, supra*, at 372. Therefore, if an attorney could get around the rule by claiming that she forgot about the time limit imposed by Rule 4(j), the rule would be meaningless as any attorney could invent such a story. *Id.* at 372. The court then recognized that one circumstance that might constitute good cause is where a plaintiff "was prevented from effecting service within the 120–day limit by factors beyond his control." *Id.* at 372.

To support this proposition, the court cited *Moorehead v. Miller*, 102 F.R.D. 834 (D. V.I.1984). In *Moorehead*, a *pro se* plaintiff failed to serve the defendant until eight months after he filed his complaint. The plaintiff cited two factors to demonstrate good cause; first, that he had been hospitalized in Atlanta, Georgia, until August 28, 1983, and, second, that after he returned to the Virgin Islands on September 1, 1983, he was incorrectly told by the court's clerk that service had been effected. The court held that these facts established good cause. *Id.* at 836. It is important to note that the 120–day period had passed even before the plaintiff was released from the hospital as his complaint was filed on April 27, 1983. Therefore, it seems that the only factor preventing service during the 120–day period was plaintiff's illness.

In analogous situations, it has been held that illness of counsel may justify a failure to comply with filing deadlines. *See, e.g., Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464, 465 (9th Cir.1984), *cert. denied*, 470 U.S. 1053, 105 S.Ct. 1755, 84 L.Ed.2d 819 (1985) (under "excusable neglect" standard of Fed.R.App.P. 4(a)(5), the

---

* The Court notes that Mr. Dean passed away as a result of his illness in October of 1986.

illness of counsel "may amount to extraordinary circumstances when the illness is so physically and mentally disabling that counsel is unable to file the appeal and is not reasonably capable of communicating to co-counsel his inability to file."); *Board of Education v. Aetna Casualty & Surety Co.*, 48 F.R.D. 402 (S.D.N.Y.1969) (counsel's severe injuries left him fully disabled for three weeks and created a backlog of work. Under these circumstances, it was more than "mere inadvertence" when he overlooked the 10–day deadline for filing a notice of jury demand under Fed.R.Civ.P. 38(b)).

As in *Boeing*, Dean was the only attorney representing the plaintiff. It is also clear that Dean's illness was severe enough to meet the standards set forth in the cases cited above. The defendants claim that despite Dean's illness, the failure to effect timely service resulted from mere inadvertence or negligence. The Court disagrees. Clearly, the circumstances here were beyond Dean's control and there is no reason to believe that this "good cause exception would swallow the rule." *Wei, supra,* at 372. Therefore, the Court finds that the policy of Rule 4(j) is consistent with the finding of good cause here. Lastly, the defendants claim that by taking certain acts during the 120–day period, Dean demonstrated that he remained competent. The Court might be swayed by this reasoning except that it must look at Dean's entire caseload rather than just his responsibilities in this case in determining whether he was rendered incapable of meeting his responsibilities. In this case, where there was only a short delay of 17 days, where such delay was not strategic and where there is no indication of any injury to the defendants, the Court will not "weigh with a jeweler's precision the physical and emotional pressures upon counsel against the few days of grace at stake herein." *Aetna, supra,* at 403.

The Court concludes that "good cause" has been shown.

IT IS, THEREFORE, HEREBY ORDERED that the defendants' motion to dismiss is DENIED.